Hostetter *v.* Sterner's Grocery, Inc., Appellant.

Argued May 27, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Robert H. Griffith,* with him *Arthur Markowitz* and *Markowitz, Liverant, Rahauser & Kagen,* for appellant.

*William W. Hafer,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, September 30, 1957:

This appeal is from a decree in equity "enjoining and restraining the defendant, Sterner's Grocery, Inc., its successors, agents and employees, from operating a slaughterhouse on the premises known and numbered as 455 Carlisle Street, in the Borough of Hanover, York County." The decree was based on the chancellor's findings that the defendant's operation of a slaughterhouse in a predominantly residential neighborhood was

a nuisance which adversely affected the health of the thirty plaintiffs (all of whom live within a two-block radius of the above-mentioned property), impaired the value of the plaintiffs' properties and interfered with their use and enjoyment thereof.

The appellant does not dispute the chancellor's findings and, on this appeal, raises but a single question of law, viz., whether the plaintiffs' right to injunctive relief for the abatement of a long-continued nuisance was barred by laches. On this point, the court held that "the defense of laches will not apply to defeat the enjoining of a continuing nuisance by a court of equity." The ruling finds support in the decisions of many jurisdictions (see 66 C.J.S., Nuisances, §119, p. 893; 39 Am. Jur., Nuisances, §165, p. 436; Annotation, 6 A.L.R. 1098) but, as here stated, may be too broad: see *Harris v. Susquehanna Collieries Co.*, 304 Pa. 550, 558, 156 A. 159. However, we need not now concern ourselves with that question. The chancellor's findings, which are amply supported by the evidence and were confirmed by the court on exceptions, do not support a conclusion that the plaintiffs were guilty of laches.

The slaughtering operations, whereof the plaintiffs complain, had been conducted on the indicated premises by the defendant corporation and its predecessors, A. Franklin Sterner and his wife, uninterruptedly since 1940. Sterner and his wife first opened a small grocery store in their residence at the location described in 1938. In conjunction with the grocery business, they periodically killed and dressed poultry in a barn to the rear of their dwelling. In 1940, they expanded their slaughtering operations so as to include the killing and dressing of livestock. Three years later, they built a two-car, concrete-block garage (in place of the barn) where they thereafter slaughtered live-

stock and poultry during the day and housed automobiles at night. Some two and a half years prior to the hearing in this case, the defendant company built an 18 x 8 x 14 foot addition to the garage. The building permits for these improvements indicated that the structure was to be used as a garage; and the entire building could be so used down to the time of trial.

The Sterners and a third person in 1951 formed the defendant corporation to conduct the grocery and meat and poultry business. Four years later (1955), the company opened two new stores. Supplying these additional retail outlets has greatly increased the defendants' slaughtering business both in magnitude and frequency of performance. As the chancellor competently found,—"6. The size and use of the slaughterhouse has slowly and gradually increased since its inception by the additional slaughtering of cattle and swine. 7. The slaughterhouse has been in full operation during the last two years; slaughtering of one type or another takes place in said slaughterhouse four, five or six days of each week of each year." The plaintiffs, who variously have resided in the neighborhood for periods ranging from three to forty-eight years prior to the filing of their bill of complaint, instituted the present suit on August 15, 1955. They could hardly be said to have slept on their rights. However, the decision need not turn on the length of the delay in the institution of the suit.

As Mr. Justice (later Chief Justice) STERN stated for this court in *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 157, 53 A. 2d 143, "the question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute

or prosecute his claim: First National Bank of Pittston, Executor v. Lytle Coal Co., 332 Pa. 394, 3 A. 2d 350. But laches will not be imputed to a plaintiff where no injury results to defendant by reason of the delay: Montgomery Bros., Inc. v. Montgomery, 269 Pa. 332, 112 A. 474; Selmer v. Smith, 285 Pa. 67, 131 A. 663; Schireson v. Shafer, 354 Pa. 458, 47 A. 2d 665."

While the defendant company averred in its answer to the complaint, under the heading of New Matter, that it was "prejudiced by the long delay on the part of the plaintiffs . . .," proof of the averment was wholly lacking. The structure and improvements which the defendant built were designed as, and in fact have been used for, a garage. In response to the question, "Then it's really a slaughterhouse in itself?", A. F. Sterner testified, "No, it's a garage; I can use it as a garage today, yet." This was followed a little later by the court's observation that "He [Sterner] testified that it [viz., the money alleged to have been expended for improvements] was for the purpose of building a garage."

The court below rejected as unfounded the defendant's contention that the instant action was unduly delayed and that, if sustained, would cause financial loss to the defendant. In this connection, the learned chancellor cogently summarized in his opinion for the court,—"The testimony of A. Franklin Sterner, one of the owners of the defendant corporation, establishes the fact that the investment, in the nature of the cost of the original building and the cost of the improvements made thereto, was for the erection of a garage to be used by the defendant or its predecessors. It was shown in the testimony that when permits for the erection of the original building and the improvements thereto were secured by the defendant, or its predecessors, the said building and improvements were for

the purpose and use as a garage. No mention was ever made that said building and improvements were to be utilized as a slaughterhouse by the defendant, or its predecessors. Mr. Sterner testified that this was the original intent for use and that it could still be used for a garage. All this clearly establishes the fact that, if injunctive relief were granted enjoining the operation of the slaughterhouse by the defendant, it would result in no financial loss to the defendant."

In its brief in this court, the appellant makes the bald assertion that "if the defendants had to discontinue the operation of the slaughterhouse at this point, the cost of removal would be tremendous and that long before the suit was started the defendant incurred expenses and entered into burdensome engagements." It is a sufficient answer to point out that the record is barren of a single word of testimony to such effect.

It is abundantly clear that the court below correctly refused to find the plaintiffs guilty of laches. As laches constitutes the appellant's only assignment of error, it follows that the decree must be affirmed.

Decree affirmed at the appellant's costs.