J-A23035-21

2021 PA Super 223

| | | |
|---|---|---|
| RONALD F. MORGAN, SR., AND LINDA K. MORGAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MILLSTONE RESOURCES LTD. | : | |
| | : | No. 27 MDA 2021 |
| Appellant | : | |

Appeal from the Order Entered November 24, 2020
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2019 CV 0210

BEFORE:    PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED:  NOVEMBER 16, 2021**

Appellant, Millstone Resources LTD. ("Millstone"), appeals from the November 24, 2020, Order entered in the Court of Common Pleas of Bradford County, which permanently enjoined Millstone from discharging rainwater/runoff onto the south side of Label Lane that in turn flows onto the property of Appellees, Ronald F. Morgan, Sr., and Linda K. Morgan ("the Morgans"), as well as directed Millstone to pay monetary damages to the Morgans in the amount of $12,360.00.

As discussed in depth *infra*, pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(4)(ii), we exercise jurisdiction over this appeal to the extent it concerns the grant of permanent injunctive relief to the Morgans.  Further,

_____

[*] Former Justice specially assigned to the Superior Court.

since a final judgment was entered after Millstone filed the instant notice of appeal, we exercise jurisdiction over Millstone's claims related to the trial court's award of monetary damages to the Morgans.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On August 6, 2019, the Morgans filed a civil complaint in which they presented one claim of continuing nuisance[2] and one claim of continuing trespass[3] against Millstone. The Morgans sought monetary damages, as well "as a permanent injunction against Millstone enjoining it from draining water from its property into the

_____

[1] *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 513 (Pa.Super. 1995) (*en banc*) ("[I]t is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment.") (citation omitted)).

[2] Private nuisance is defined as:
> [C]onduct that is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
> (a) intentional and unreasonable, or
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Youst v. Keck's Food Service, Inc.*, 94 A.3d 1057, 1072 (Pa.Super. 2014) (quotation omitted).

[3] Liability for stormwater trespasses is limited. "[T]he right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities." *Id.* at 1073.  If the upper landowner "alters the natural conditions so as to change the course of the water, or concentrate[s] it at a particular point, or by artificial means [] increase[s] its volume, [the landowner] becomes liable for any injury caused thereby." *Id.*

- 2 -

sluice pipe which reaches under and/or across Label Lane." The Morgans'
Complaint, filed 8/6/19, at 3-4.

Millstone filed an answer with new matter, to which the Morgans filed a
reply. On July 24, 2020, Millstone filed a pre-trial memorandum, which it
amended on July 28, 2020, and on July 29, 2020, the Morgans filed a pre-trial
memorandum. On October 29, 2020, the trial court held a non-jury trial at
which all parties were represented by counsel.

The trial court has aptly summarized the evidence presented at the non-
jury trial as follows:

> [The Morgans] own property located at and reside at ***
> Prospect Street, Troy Borough, Pennsylvania. They purchased the
> property in August of 1995. The property is at the intersection of
> Prospect Street and Label Lane. [Millstone] owns property
> situated uphill to the west of [the Morgans'] property and on the
> opposite side of Label Lane. Millstone's property is located in Troy
> Township. When [the] Morgans purchased their property, there
> were ditches with 10-12-inch sluice pipes on [the] east and west
> side of their driveway. In January [of] 1996, there was an extreme
> amount of rain and snow melt that ran down Label [Lane] and into
> [the] Morgans' driveway towards their garage. In 1997, [the]
> Morgans' installed a 15-inch sluice pipe in a previously open ditch
> in front of their home and covered it with gravel and dirt for the
> installation of a small parking area. They replaced the original
> sluice pipe with a 15-inch sluice and connected it to the neighbor's
> sluice pipe to the west, which was also a 15-inch pipe. [The]
> Morgans had installed a gravel berm in front of their driveway and
> house. In 2000[,] Label [Lane] was repaved with a "crown," which
> helped in taking water and runoff down the street rather than into
> [the] Morgans' driveway. [The] Morgans had no further water
> issues until 2005 and after.

> In 1995, the Millstone property had a small paved area[,]
> and the remaining portion was a field with brush. Millstone
> purchased the property in 2002. [In] [a]pproximately 2005,
> Millstone built a warehouse and paved the entire property. At the
> suggestion of [the] Troy Borough Manager, even though the

- 3 -

property is located in Troy Township, Millstone installed a sluice pipe under Label Lane to carry water from its newly paved property to the south side of Label Lane. The Borough Manager was concerned about water runoff from the parking lot onto the immediate neighboring properties on the developed lot's side of the street. Because the property is located in Troy Township, there was no permit required from the Borough. The Borough Manager was aware that there were water issues thereafter with the Morgans' property. He did nothing. There are three drainage grates within the paved area which collect water from gutters, side of [the] building[,] and parking lot[,] and it flows into the sluice pipe diverting water under Label Lane to the south side of Label Lane.

Thereafter[,] there would be extra water flow on the south side of Label Lane from Millstone's property down the hill toward [the] Morgans' property after every rainfall. This water flow washed out [the] Morgans' gravel berm at least 8-10 times from 2005 through to 2018. [The] Morgans had to repair/replace the berm each time.

In August [of] 2018[,] an unusual amount of rainfall occurred in Troy Borough. Mrs. Morgan described it as her not having seen water accumulate like this since 1996 (referring to the snowmelt and rain). The rainwater flowed down Label Lane, the ditches and sluice pipes were inadequate to handle such a large amount of water[,] and [the water] poured into [the] Morgans' garage and woodshop. There was at least 4 inches of water in the garage and woodshop. [The] Morgans had to replace the wall boards, remove mud, dispose of items, pressure wash[,] and clean. It took 2 months to complete the work. Again, the berm was washed out/damaged. And, they again replaced it.

Thereafter, [the] Morgans installed an 18-inch sluice pipe and had the berm sloped opposite of their driveway in hopes that water would remain in [the] road or in [the] sluice pipe.

[The] Morgans did not make any complaints to Millstone until after the damage to their garage and woodshop in 2018. They had complained to Troy Borough several times about their berm being damaged[, and the Borough] in turn told them the berm was theirs[,] and it was their responsibility to repair it.

The 2018 August rainstorm was highly unusual. There was flooding in different parts of Troy Borough. A creek flooded in the lowest part of town; a bridge was closed due to being underwater, and a road was destroyed and closed for 2-3 months, etc. The

destruction came about very quickly. The certified meteorological records for the area in which [the] Morgans' property and Millstone's property are located indicate that 3.15 inches of rain fell on August 14, 2018. Said record indicates that the total rainfall for the month was 7.14 inches with no other day in the month of August being over 0.80 inches.

Trial Court Opinion, filed 11/24/20, at 1-3.

After the non-jury trial, on November 24, 2020, the trial court entered an order indicating the following:

1. On the Counts of Nuisance and Trespass, judgment is entered in favor of [the Morgans] and against Millstone in the amount of $12,360.00.

2. Millstone, its agents, and employees are hereby enjoined from hereby [*sic*] discharging rainwater/runoff onto the south side of Label [Lane] that in turn flows onto [the Morgans'] property causing damages.

Trial Court Order, filed 11/24/20, at 1.[4] The trial court attached to its order an opinion in which it made detailed findings of fact and conclusions of law pertaining to the award of damages, as well as the entry of the permanent injunction.

___

[4] Although the trial court inadvertently utilized the word "judgment" in the first paragraph of the order, it is clear that the order was the trial court's decision after the non-jury trial. *See* Pa.R.Civ.P. 1038; *Matenkoski v. Greer*, 213 A.3d 1018 (Pa.Super. 2019) (noting that although the trial court called its determination after trial a "verdict" the correct term in a civil bench trial is a "decision"); *Shonberger v. Oswell*, 530 A.2d 112, 113 n.1 (Pa.Super. 1987) (indicating that, where the trial court labeled a decision following a bench trial a judgment, this Court would treat such procedurally as a decision). Millstone recognizes the trial court's November 24, 2020, Order did not constitute a judgment.

No party filed post-trial motions. However, on December 23, 2020, Millstone filed a notice of appeal to this Court from the trial court's November 24, 2020, Order. Thereafter, on January 5, 2021, the Prothontary entered judgment in the amount of $12,360.00, plus interest, against Millstone and in favor of the Morgans. Millstone filed a timely Pa.R.A.P 1925(b) statement on January 25, 2021.

On March 10, 2021, this Court directed Millstone to show cause as to why the appeal should not be dismissed pursuant to Pa.R.Civ.P. 227.1(c)(2) for Millstone's failure to file post-trial motions following the non-jury trial. Millstone filed a response on March 22, 2021, noting the trial court's decision included the grant of injunctive relief. Further, Millstone indicated it filed its notice of appeal prior to the entry of the final judgment and pursuant to Pa.R.A.P. 311(a)(4)(ii), which permits an immediate appeal as of right with regard to injunctions. Thus, Millstone argued it was not required to file post-trial motions. This Court discharged the rule to show cause but advised that the merits panel may revisit the issue.

On appeal, Millstone sets forth the following issues in its "Statement of Questions Involved" (verbatim):

1. Did the Trial Court abuse its discretion and/or err as a matter of law in concluding that trespass (if established by the Morgans) was a "continuing trespass" and/or "continuing nuisance," rather than a "permanent trespass" and/or "permanent nuisance" that would have been barred by the applicable statute of limitations?

2. Did the Trial Court abuse its discretion and/or err as a matter of law in concluding that the Morgans' equitable claims were not barred by the doctrine of laches?

3. Did the Trial Court abuse its discretion and/or err as a matter of law in concluding that, although a *vis major* had been established by Millstone, such a defense would not apply to bar recovery for damages to the Morgans' berm because the berm had been washed out "numerous times since 2005 and continued to occur on the subject day in August, 2018"?

4. Did the Trial Court abuse its discretion and/or err as a matter of law in not addressing Millstone's affirmative defense of excuse, *de jure* authority, and implied license, or alternatively not developing the basis for its apparent conclusion that the defenses do not apply to bar the Morgans' claims?

5. Did the Trial Court abuse its discretion and/or err as a matter of law in concluding that Millstone's affirmative defenses of consent, estoppel, and waiver did not apply to bar the Morgans' claims?

6. Did the Trial Court abuse its discretion and/or err as a matter of law in granting permanent injunctive relief to the Morgans without undertaking the requisite analysis and making the requisite supporting findings?

Millstone's Brief at 2-5 (suggested answers omitted).

Preliminarily, we address whether we should quash this appeal on the basis Millstone waived all appellate issues by failing to file a post-trial motion. Our scope of review is plenary regarding this question of law. *See Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491 (2002).

As indicated *supra*, Millstone contends it was not required to file a post-trial motion because the trial court's November 24, 2020, Order, which included a permanent injunction from which Millstone appeals, is interlocutory, and Pa.R.A.P. 311(a)(4)(ii) entitles Millstone to appeal immediately from that injunction without complying with Pa.R.Civ.P. 227.1.

Pa.R.Civ.P. 227.1 provides: "Post-trial motions shall be filed within ten days after…the filing of the decision in the case of a trial without jury." Pa.R.Civ.P. 227.1(c)(2). In **Chalkey**, our Supreme Court emphasized that this rule applies to equity cases. The Court explained that:

> [A] party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal. In other words, a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal under the court decides any timely post-trial motions. **See** Pa.R.Civ.P. 227.1(a).
>
> ***
>
> With this unequivocal rule, there is no danger that parties will be confused as to whether they should file post-trial motions or proceed directly to an appeal from an order entered by a trial court in an action in equity.

**Chalkey**, **supra**, 805 A.2d at 494-96 (emphasis in original).

Under Pa.R.Civ.P. 227.1, a party that has received a trial court's decision after a non-jury trial[5] may move to have the trial court "direct the entry of judgment in favor of any party." Pa.R.Civ.P. 227(a)(2). "In connection with that request, or in the alternative, it can seek to have the judgment changed or modified, or can ask for a new trial." **Thomas A. Robinson Family Unlimited Partnership v. Bioni**, 178 A.3d 839, 844 (Pa.Super. 2017) (citing

---

[5] In the case *sub judice*, the record reveals the trial court held a non-jury trial, and on November 24, 2020, the trial court rendered a decision on all issues. **See** Pa.R.Civ.P. 1038 (discussing civil trials without a jury and the rendering of a decision).

Pa.R.Civ.P. 227.1(a)(1) & (4), (e)).  In any event, it is the judgment resulting from that motion that will constitute the appealable "final order" in the case. *See id.*  The losing party will then be able to appeal from that order under Pa.R.A.P. 341, which affords a right of appeal "from any final order…of a trial court."  Pa.R.A.P. 341(a).

Here, Millstone failed to follow this course. Specifically, Millstone appealed the trial court's decision prior to the entry of the final judgment[6] and without the filing of post-trial motions. However, this does not end our inquiry, as Millstone specifically indicates that it appealed the trial court's November 24, 2020, Order pursuant to Pa.R.A.P. 311(a)(4)(ii).

In this vein, Millstone contends Rule 311(a)(4)(ii) provides it with an alternate route to appellate review via which post-trial motions are not required.  According to Millstone, the permanent injunction issued by the trial court in the November 24, 2020, Order falls under Pa.R.A.P. 311(a)(4)(ii). Thus, Millstone contends it is entitled to appeal immediately from the interlocutory permanent injunction without any need to file a post-trial motion.[7]

---

[6] As indicated *supra*, on January 5, 2021, after Millstone filed its notice of appeal, the Prothonotary entered a judgment against Millstone in the amount of $12,360.00, plus interest.

[7] It is well-settled that it is generally improper to file a motion for post-trial relief when appealing pursuant to Pa.R.A.P. 311.  *Pineda v. Perry*, 244 A.3d 1240, 1246 (Pa.Super. 2020).

In order to resolve this issue, we must examine Pa.R.A.P. 311,[8] which relevantly provides:

> **(a) General rule.**—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> ***
>
> (4) *Injunctions.*—An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:
>
> ***
>
> (ii) After a trial before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4)(ii) (bold and italics in original).

In the case *sub judice*, there is no dispute that the trial court's November 24, 2020, Order, which enjoined Millstone from discharging rainwater/runoff onto the south side of Label Lane, constituted the grant of an injunction as provided for in Rule 311(a)(4). Thus, the order is immediately appealable "unless the order was entered: [a]fter a trial before entry of the final order." Pa.R.A.P. 311(a)(4)(ii).

Here, the trial court's November 24, 2020, Order was entered after a non-jury trial on all issues. **See** Pa.R.Civ.P. 1038. Further, while the trial court's order was entered as the decision following trial, it was entered prior

---

[8] In construing Rule 311(a)(4), this Court is guided by the rules of statutory construction. Pa.R.A.P. 107. When the words of a statute are clear and free from all ambiguity, the letter of the words cannot be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b).

to the January 5, 2021, judgment, which constituted the final order in this case. *See Matenkoski v. Greer*, 213 A.3d 1018 (Pa.Super. 2019) (holding decision in a non-jury trial does not become final for purposes of appeal until properly reduced to and entered as a formal judgment under Pa.R.Civ.P. 227.4). Thus, under the plain language of Rule 311(a)(4)(ii), the November 24, 2020, Order was entered "[a]fter a trial before entry of the final order[,] and, accordingly, an appeal as of right would not ordinarily be permitted. *See* Pa.R.A.P. 311(a)(4)(ii).

However, "while Rule 311(a) provides that…injunctions entered after trial but before a final order generally are not appealable, it has several important exceptions[.]" *Matenkoski*, 213 A.3d at 1025. One such exception is relevant here: an order is immediately appealable when it "enjoins conduct previously permitted" and is "effective before entry of the final order." *Id.* (quoting Pa.R.A.P. 311(a)(4)(ii)).

The present trial court decision fits within this exception as it relates to the grant of injunctive relief. Specifically, "[p]rior to this decision, there was no order in this case enjoining [Millstone's] conduct. Thus, the trial court enjoined conduct 'previously permitted.'" *See Matenkoski*, 213 A.3d at 1025. Thus, the decision was "'effective before entry of the final order' because it was effective immediately." *Id.* (quotation omitted). That is, the injunction

"was not contingent upon entry of a final judgment[.]"[9] ***SBA Towers II LLC v. Wireless Holdings, LLC***, 231 A.3d 901, 907 (Pa.Super. 2020) (*en banc*) (citation omitted).

Accordingly, we exercise jurisdiction over this appeal pursuant to Rule 311(a)(4)(ii) to the extent it concerns the grant of injunctive relief to the Morgans, and we conclude issues related thereto are not waived for Millstone's failure to file a post-trial motion.[10] ***See Thomas A. Robinson Family Limited Partnership***, ***supra*** (explaining Rule 311(a)(4)(ii) as it relates to the entry of an injunction after the trial court resolves all claims and no other claims remain pending). ***Matenkoski***, ***supra***.

To the extent Millstone presents issues related to the trial court's award of damages on the counts of continuing nuisance and continuing trespass, we

---

[9] We note the trial court did not indicate the injunction was stayed pending the resolution of the entry of judgment.

[10] As this Court has noted:
> The clear purpose [of Rule 311(a)(4)(ii)] is to permit an immediate appeal if an immediately-effective permanent injunction makes such a change to the status quo that the aggrieved party needs quick appellate recourse without incurring delays from post-trial proceedings in the trial court. The exception is designed to provide the putative appellant with the option to file for immediate review of a "new" injunction entered after trial, notwithstanding that final judgment has not been entered.

***Thomas A. Robinson Family Limited Partnershp***, 178 A.3d at 847 (footnotes omitted). We note other rules similarly permit bypass of time-consuming post-trial procedures in exigent circumstances requiring speedy appellate action. ***See*** Pa.R.Civ.P. 1531(f)(2) (making Rule 227.1 inapplicable to injunction actions involving freedom of expression).

exercise jurisdiction since a formal judgment was entered after Millstone's filing of the notice of appeal. ***See Johnston the Florist, Inc.***, 657 A.2d at 513 ("[I]t is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment.") (citation omitted)).

However, inasmuch as preservation of claims related thereto required inclusion in a timely post-trial motion, we deem these claims to be waived. ***See Chalkey***, ***supra*** (setting rules regarding the filing of post-trial motions following an action at law or in equity).[11] Consequently, as a practical matter, this means we review Millstone's second, fourth, fifth, and sixth issues on the merits, and we find issues one and three to be waived.[12]

_____

[11] ***See Guiser v. Sieber***, 237 A.3d 496 (Pa.Super. 2020) (holding that, even though post-trial motions were pending and no final judgment had been entered, appeal from trial court's decision to grant an injunction was appealable under Rule 311(a)(4)(ii), but other equitable claims were not yet ripe and appeal quashed as to those claims); ***Matenkoski***, ***supra*** (allowing appeal from injunction where order met exception provided for in Rule 311(a)(4)(ii) but dismissing denial of the appellant's counterclaim for injunctive relief as it did not meet the exception).

[12] In the summary of argument and argument portions of the appellate brief, Millstone has specifically identified certain issues as concerning the Morgans' claim for monetary damages. ***See*** Millstone's Brief at 16 ("[T]he Morgans' claim for damages is barred by the statute of limitations."), 18 (pertaining to issue one "the statute of limitations would bar the Morgans' claims for damages."), 27 (pertaining to issue three the trial court erred in "concluding that the defense of *vis major* would not apply to bar recovery for damages to the Morgans' berm."). Accordingly, we deem these issues to be waived for Millstone's failure to include them in a timely post-trial motion. ***See Chalkey***, ***supra***. Even if not waived, we agree with the trial court that these issues are
*(Footnote Continued Next Page)*

Millstone contends the trial court erred in failing to hold that the Morgans' equitable claim for injunctive relief is barred by the doctrine of laches. Specifically, Millstone asserts it demonstrated a delay arising from the Morgans' failure to exercise due diligence, as well as prejudice to Millstone from the delay. **See** Millstone's Brief at 25.

The equitable defense of laches applies to claims for injunctive relief and may be grounds for the denial of an injunction. ***Holiday Lounge, Inc. v. Shaler Enterprises Corp.***, 441 Pa. 201, 272 A.2d 175, 176-77 (1971).

> [I]n the absence of fraud or concealment, it is a general rule that laches follows the statute of limitations. However, because statutes of limitation are not controlling in equity, but only provide guidance in determining the reasonableness of any delay, this Court has allowed suits in equity to proceed despite significant delays in bringing the action.

***United Nat. Ins. Co. v. J.H. France Refractories Co.***, 542 Pa. 432, 668 A.2d 120, 124 (1995) (citations and quotations omitted).

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

---

meritless. **See** Trial Court Opinion, filed 11/24/20, at 9 (holding statute of limitations did not bar the Morgans' action at law since "[i]n a continuing trespass or nuisance action, each new trespass and damage tolls the statute of limitations. Thus, damages may be claimed for two years after a trespass or new nuisance-the 2018 storm water flooding [the] Morgans' [property]."); ***Id.*** at 9-10 (holding that the defense of *vis major*, pertaining to a landowner not being responsible for damage resulting from an extraordinarily heavy rainfall, does not apply to washing out of berm numerous times over the years).

*Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014) (quoting *In re Estate of Scharlach*, 809 A.2d 376, 382-83 (Pa.Super. 2002)). "The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual*,* and is determined by examining the circumstances of each case." *Fulton*, 106 A.3d at 131 (citations omitted).

With regard to the first factor, pertaining to delay arising from the failure to exercise due diligence, Millstone argues the evidence reveals the Morgans unduly delayed in filing their complaint. Specifically, Millstone avers the Morgans knew about Millstone's drainage system as early as 2005, and thus, they unduly delayed in waiting until August of 2019 to file their complaint seeking injunctive relief. *See* Millstone's Brief at 26.

In rejecting Millstone's defense of laches, the trial court noted the Morgans sought a permanent injunction in their August 6, 2019, complaint after their property was flooded by the August 2018 storm. The trial court reasoned that the rainwater/runoff from the Millstone's property onto the south side of Label Lane, which in turn flowed onto the Morgans' property, was a continuing trespass and continuing nuisance, and thus, Millstone could not benefit from the defense of laches. *See* Trial Court Opinion, filed 11/24/20, at 9 (citing *Hostetter v. Sterner's Grocery, Inc.*, 390 Pa. 170, 134 A.2d 884, 885 (1957)). We find no error in this regard.

Our Supreme Court has held "[t]he defense of laches will not apply to defeat the enjoining of a continuing nuisance by a court of equity." *Id.* (quotation and quotation marks omitted). *See Smith v. Bell Tel. Co. of PA*, 397 Pa. 134, 153 A.2d 477, 482 (1959) (noting "the injury here is in the nature of a continuing nuisance giving rise to causes of action so long as it continues").

> [I]n the case of a continuing trespass or nuisance it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused[.] For that reason, a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense.
>
> To determine whether a trespass or nuisance constitutes a permanent or continuing cause of action, courts must consider a variety of factors, including: 1) the character of the structure or thing which produces injury; 2) whether the consequences of the [trespass/nuisance] will continue indefinitely; and, 3) whether the past and future damages may be predictably ascertained.

*Caruso-Long v. Reccek*, 243 A.3d 234, 239 (Pa.Super. 2020) (quotation marks, quotations, and citations omitted).

We conclude the trial court did not err in finding the Morgans' claim for injunctive relief was for a continuing trespass and continuing nuisance. Here, the flooding on the Morgans' property resulted from rainwater running off the Millstone's property after Millstone paved a parking lot and installed a sluice pipe under Label Lane in 2005. Trial Court Opinion, filed 11/24/20, at 2. After 2005, rainwater flowing from Millstone's property washed out the Morgans'

gravel berm at least 8-10 times and poured into the Morgans' garage and woodshop on August 14, 2018. *Id.* at 2-3.

Since the flooding of the Morgans' property was intermittent and unpredictable after heavy rains, it was impossible for the Morgans to know exactly how many incidents of flooding would occur or the severity of the flooding. *Id.*

Thus, the record supports the trial court's determination that the Morgans' claim for injunctive relief related to a continuing trespass and nuisance. *See Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148 (Pa.Super. 2019) (holding that, although the construction of land and use of pipe for water was a permanent change on the defendant's property, the construction did not change or injure the plaintiff's property; but rather, the changes to the plaintiff's property occurred when the defendant's pipe occasionally became overwhelmed with water flow/runoff, so it was a continuing trespass); *Graybill v. Providence Twp.*, 593 A.2d 1314, 1316–1317 (Pa.Cmwlth. Ct. 1991) (*en banc*), *affirmed per curiam,* 533 Pa. 61, 618 A.2d 392 (1993)[13] (holding claim was for a continuing trespass given the plaintiff alleged fewer than ten incidents of flooding over a period of almost four years and it was impossible to know exactly how many incidents of flooding would occur or the

---

[13] Although we are not bound by the holdings of our sister court, we note this Court has previously relied upon *Graybill*. *See Kowalski*, *supra*; *Cassel-Hess v. Hoffer*, 44 A.3d 80 (Pa.Super. 2012).

severity of them). Accordingly, the defense of laches did not apply to defeat the enjoining of the "continuing" action in this case. *See Smith*, *supra*; *Hostetter*, *supra*.

Millstone next argues the trial court abused its discretion in failing to conclude the defenses of excuse, *de jure* authority, and implied license did not bar the Morgans' claim for injunctive relief.[14] In support of its claim, Millstone points to the trial court's finding that "[a]t the suggestion of [the] Troy Borough Manager, even though the property is located in Troy Township, Millstone installed a sluice pipe under Label Lane to carry water from its newly paved property to the south side of Label Lane." Millstone's Brief at 29 (citing Trial Court Opinion, filed 11/24/20, at 2).

With regard to the defenses of excuse and *de jure* authority, Millstone's entire appellate argument is as follows:

> The law recognizes the ability of landowners to receive direction from a municipality in the handling of stormwater. For example, there is "the right of [a] borough to allow a private owner, along a street which has no drain, to connect with a drain on another street." *Wood v. McGrath*, 150 Pa. 451, 456, 24 A. 682, 683 (Pa. 1892). When receiving permission from a municipality to undertake certain work in the manner dictated by the municipality, liability would not attach on a theory of nuisance. *See, e.g., McKim v. Philadelphia*, 217 Pa. 243, 247, 66 A. 340, 342 (Pa. 1907) (noting that in the context of the erection of electric poles, municipal permission would foreclose a finding of a nuisance). Taken together, these authorities could be viewed as supporting a rule whereby a private owner of land directed by an

---

[14] To the extent Millstone contends these theories also provide a defense to the Morgans' claim for damages, we conclude the issue is waived due to Millstone's failure to file a post-trial motion. *Chalkey*, *supra*.

authorized municipal representative[8] to connect a stormwater drain on a particular side of a street in an attempt to address the common enemy of water, cannot later be deemed to have committed an actionable wrong against another landowner, where such action is predicated on the very system constructed in the manner sanctioned by the municipality.

[8]In this case, Dan Close has served as the Borough Manager and the Borough's Street Commissioner, an arrangement allowed pursuant to 8 Pa.C.S. § 1143. Millstone reasonably could have understood in 2005 that Mr. Close was authorized to direct where, and in what manner, pipes could be laid under Borough streets to empty stormwater into Borough ditches.

Millstone's Brief at 29-30 (citation to record omitted).

We have reviewed the two cases cited by Millstone, and we conclude they do not stand for the broad rule of law proposed by Millstone.[15]

In **Wood**, **supra**, the borough council gave the defendant permission to build a drain. The Supreme Court held that "as it was in the power of council to authorize the digging and laying of the drain, the act of the defendant in doing so was a lawful one." **Wood**, **supra**, 24 A. at 453. Thus, when the plaintiff complained about the road being dug up for the defendant to install the drain, the Supreme Court held it was not a *per se* nuisance. **Id.** at 454.

However, although the Supreme Court held the borough had the power to grant the defendant permission to lay a drain, it noted that "the next subject requiring consideration is whether a nuisance to the plaintiff has been

[15] We note the trial court addressed Millstone's defenses of excuse and *de jure* authority simply by holding "Millstone claims that it was justified and acted properly in managing storm water. There is no justification for altering water flow/runoff creating a continuing trespass upon lower lands. The law is clear that an upper landowner who alters the natural flow of water is responsible." Trial Court Opinion, filed 11/24/20, at 8.

- 19 -

produced by the use of the drains, such as is remediable by injunction." *Id.* at 457. The Supreme Court then examined the defendant's use of the drain to determine whether the plaintiff had established the existence of a nuisance subject to an injunction. *Id.*

Accordingly, to the extent **Wood** is relevant to the case *sub judice*, we conclude it does not stand for the broad proposition that a plaintiff may not seek an injunction for nuisance simply because the borough granted the defendant permission to construct the drain. Rather, as **Wood** provided, and as occurred in the case *sub judice*, the court must also consider whether the defendant's use of the drain created a nuisance.[16]

Moreover, in **McKim**, **supra**, a milk dealer was driving a one-horse milk wagon in Philadelphia when his wagon stuck the base of a trolley pole and overturned, resulting in his death. It was dark outside at the time of the accident since there was no artificial light on the pole or in the vicinity of the pole. **See id.**

The milk dealer's wife sued the City of Philadelphia seeking damages for "the negligent and improper conduct of the city in not keeping its street, at the place of the accident, in a reasonably safe condition for persons who had occasion to use it." **McKim**, **supra**, 66 A. at 341. In this regard, she averred

_____

[16] As indicated *supra*, in the case *sub judice*, the trial court concluded there was a continuing nuisance due to the rainwater/runoff from Millstone's sluice pipe.

the city was negligent in permitting the pole with its large projecting base to remain in the street for more than two years without adequate lighting. *Id.*

In analyzing the case, our Supreme Court noted the placement of the pole did not create a nuisance *per se* since it was "legalized" by legislative or municipal action. *Id.* at 342. However, the Supreme Court further noted that, even where a person has "the sanction of the state" for his actions, he may be liable if he "commits a fault in the manner of doing it[.]" *Id.*

Accordingly, to the extent **McKim** is relevant to the case *sub judice*, it does not grant a person acting with borough permission carte blanche excuse from liability as Millstone suggests. *Id.* (where the defendant seeks to excuse himself from maintaining a nuisance by having procured municipal permission for his act, the defendant may still be liable if he acts negligently; a defendant receiving a license is held to impliedly agree to perform the act permitted with due care).

Millstone further contends it was granted an implied license "by virtue of the Borough's manner of dealing with stormwater and the Morgans' presence as citizens of the Borough." Millstone's Brief at 30. However, in such an event, Millstone would still be required to demonstrate it performed its acts with due care so as to not create a nuisance, which it did not establish in this case. ***See id.***

In its next issue, Millstone contends the trial court erred in concluding Millstone's affirmative defenses of equitable estoppel and implied waiver did not apply to bar the Morgans' claim for injunctive relief.[17]

Regarding equitable estoppel:

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.

> The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced.

> Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken…the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statement.

> It is well established…that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence.

---

[17] Millstone also seeks to invoke Restatement (Second) of Torts § 330, which pertains to licensees and consent. *See **Hackett v. Indian King Residents Association***, 195 A.3d 248, 251 (Pa.Super. 2018) ("A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.") (quoting Restatement (Second) of Torts § 330). Millstone has failed to explain how this is relevant to the case *sub judice*, and thus, we find no relief is due.

*Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502, 503-04 (1983) (citations omitted).

Regarding the doctrine of implied waiver, "[it] applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show that he was misled and prejudiced thereby[.]" *Brown v. City of Pittsburgh*, 409 Pa. 357, 186 A.2d 399, 401 (1962) (italics omitted) (citation omitted).

Millstone contends that it installed its drainage system in 2005, and the Morgans were fully aware thereof. As such, Millstone proffers the Morgans' claims for injunctive relief are equitably estopped or subject to the doctrine of implied waiver since the Morgans took no action, aside from complaining to Troy Borough representatives. We find no relief is due.

Millstone has not averred that it was induced by the Morgans to install the drainage system or explained what it would have done differently had the Morgans complained directly to it after it installed the drainage system. Millstone has not explained how the Morgans' failure to direct complaints to Millstone established equitable estoppel or misled Millstone so as to apply implied waiver in this case. *See Farmers Trust Co. v. Bomberger*, 523 A.2d 790, 794 (Pa.Super. 1987) ("As a general rule, mere silence or inaction is not a ground for estoppel unless there is a duty to speak or act."). Thus, no relief is due on this issue.

In Millstone's final issue, Millstone complains the trial court erred in granting the Morgans permanent injunctive relief without undertaking the requisite analysis or making the necessary factual findings. Specifically, Millstone argues "[a]ssuming, *arguendo*, any actionable trespass or nuisance occurred, injunctive relief is not and was not warranted if the redress at law— that is, a damages award…was adequate to prevent any alleged legal wrong prospectively." Millstone's Brief at 34. We find no relief is due.

"To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.,* damages will not compensate for the injury. Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm." **PA Energy Vision, LLC v. South Avis Realty, Inc.**, 120 A.3d 1008, 1013 (Pa.Super. 2015) (quotation omitted). "The grant or denial of a permanent injunction is a question of law." **Id.**

Here, in determining the Morgans were entitled to injunctive relief regarding their claims of continuing trespass and continuing nuisance as to the rainwater/runoff from Millstone's property, the trial court set forth in detail its findings of fact from the non-jury trial. **See** Trial Court Opinion, filed 11/24/20, at 1-3. The trial court then concluded "[Millstone] shall be enjoined from continuing to permit water flow through [the Morgans'] property thereby causing damage." **Id.** at 11. The trial court indicated "case law uniformly holds that, when a defendant artificially alters the natural flow of the surface

water on his land so as to injury [*sic*] another property, it is a continuing trespass that will be enjoined." ***Id.***

We agree with the trial court's sound reasoning. For example, in ***Youst v. Keck's Food Service, Inc.***, 94 A.3d 1057 (Pa.Super. 2014), there was sufficient proof that the defendant diverted surface water from its natural course, channeled it unnaturally, and thereby caused a private nuisance on the plaintiffs' real estate. This Court held that, since the jury found that the defendant created a private nuisance on the plaintiff's land, the defendant must abate this nuisance and, since the nuisance is continuing, the trial court possessed the authority to issue a permanent injunction. ***See id.***

Applying ***Youst*** to the present matter, we note the evidence supports the trial court's determination that Millstone altered the natural flow of the rainwater/runoff from its property by channeling it into a sluice pipe, which in turn caused water to run onto the Morgans' property. Thus, the Millstone's system caused a continuing trespass and continuing nuisance to the Morgans. Accordingly consistent with case law, the trial court was permitted to issue the injunction in question by enjoining Millstone from continuing to discharge such water onto the South Side of Label Lane that in turn flowed onto the Morgans' property causing damage. ***See id.*** In fact, without the injunction, the nuisance/trespass is unlikely to abate, and the phenomenon in question will continue to damage the Morgans' property, resulting in litigation over the ensuing years. ***See Gardner v. Allegheny County***, 382 Pa. 88, 114 A.2d

491, 498 (1955) ("[i]t is hornbook law that a Court of Equity possesses jurisdiction to ... enjoin a nuisance.").

For all of the aforementioned reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021