2022 PA Super 145

| | | |
|---|---|---|
| JAMES LOMAX, ADMINISTRATOR OF THE ESTATE OF J. ROBERT SILLS, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : : | |
| MELISSA SULLIVAN, PHAT TO, L & H GENERAL CONTRACTOR, LLC, HAVIV DAVID, DAVID HOLDINGS, LLC, HYPERION BANK, AND ALL OCCUPANTS | : : : : : | No. 2147 EDA 2021 |

Appeal from the Order Entered September 10, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210500752

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

OPINION BY BOWES, J.:                                              **FILED AUGUST 22, 2022**

James Lomax, administrator of the estate of J. Robert Sills, appeals from the September 10, 2021 order that sustained defendant Hyperion Bank's preliminary objection in the nature of a demurrer and dismissed Appellant's amended complaint.  We affirm.

In this action to quiet title, Plaintiff claims that defendant Melissa Sullivan forged a 2007 deed, purportedly executed by then-deceased J. Robert Sills and Helen Sills, to convey property located at 1621 South 20th Street, Philadelphia ("the Property") to herself.  Plaintiff maintains that, since that fraudulent 2007 deed failed to transfer the Property to Ms. Sullivan, all

subsequent transfers, including, *inter alia*, the transfer associated with a 2012

sheriff's sale and a mortgage giving a security interest in the Property to

defendant Hyperion, are wholly inoperative, and that title to the Property,

therefore, remains properly held by Mr. Sills's estate ("the Estate").

The trial court offered a detailed history of the relevant facts and

procedural history as follows:

> On or about January 16, 1961, [the Property] was conveyed to J. Robert Sills and Helen I Sills and was recorded with the Philadelphia County Recorder of Deed at Book 1545, page 146. On June 1, 1990, Helen Sills died, predeceasing her husband, J. Robert Sills. On November 29, 1999, J. Robert Sills died. Hereinafter Helen and Robert Sills are collectively known as the "Decedents."

> On April 24, 2007, a Deed ("Deed 2") signed and dated January 7, 2007, was recorded at Philadelphia, Pennsylvania, purporting to transfer title of the Property from the Decedents to Defendant Melissa Sullivan. On May 14, 2007, a Deed ("Deed 3") dated April 9, 2007, was recorded at Philadelphia, Pennsylvania, purporting to transfer title of the Property from Defendant Melissa Sullivan to Defendant Phat To. On November 20, 2007, a Deed ("Deed 4") dated September 20, 2007, was recorded at Philadelphia, Pennsylvania, purporting to transfer title of the Property from Defendant Phat To to Defendant L&H General Contractor LLC. On October 12, 2012, a Deed ("Deed 5") dated February 23, 2012, was recorded at Philadelphia, Pennsylvania purporting to transfer title of the Property from the City of Philadelphia Sheriff Jewel Williams to Defendant Haviv David. On June 1, 2017, a Corrective Deed ("Deed 6") dated May 24, 2017, was recorded at Philadelphia, Pennsylvania, purporting to transfer title of the Property from Defendant Haviv David to [himself]. On October 10, 2018, a Deed ("Deed 7") dated October 3, 2018, was recorded at Philadelphia, Pennsylvania, purporting to transfer title of the Property from Defendant Haviv David to Defendant David Holdings. On October 10, 2018, an Open-Ended Mortgage dated October 3, 2018, was recorded at Philadelphia, Pennsylvania, granting a mortgage from grantor, Defendant David Holdings, to grantee, Defendant Hyperion, against the title of the Property,

along with 1622 South 20th Street and 1623 South 26th Street. On October 10, 2018, an UCC Financial Statement was recorded at Philadelphia, Pennsylvania, granting the aforesaid Statement, from Debtor, Defendant David Holdings, to Secured Party, Defendant Hyperion, against the title of the three properties. On November 25, 2019, an Open-Ended Mortgage Modification dated November 6, 2019, was recorded at Philadelphia, Pennsylvania, granting a mortgage modification from Obligor, Defendant David Holdings, to Lender, Defendant Hyperion, against the title of the three properties.

Plaintiff Lomax filed an Amended Complaint on June 9, 2021, alleging a fraudulent conveyance and vested interest in the Property. On July 26, 2021, Defendant Hyperion filed, late by agreement, its preliminary objections to Plaintiff's Amended Complaint. Plaintiff filed his response to Defendant Hyperion's preliminary objections on August 16, 2021. On August 18, 2021, Defendant Hyperion filed a reply memorandum to Lomax's answer. Th[e c]ourt sustained Defendant Hyperion's preliminary objections on September 9, 2021 and docketed the order on September 10, 2021. Plaintiff filed both a Notice of Appeal and a Motion for Reconsideration on October 12, 2021. Th[e c]ourt denied Plaintiff's Motion for Reconsideration on October 19, 2021.

Trial Court Opinion, 12/13/21, at 2-3.

This timely appeal followed. Both Plaintiff and the trial court complied with Pa.R.A.P. 1925. Plaintiff presents the following question for our review: "Did the trial court err when it sustained preliminary objections to an action to Quiet Title where a fraudulent, void deed was recorded and only the fraudster received notice and not the legal owner, voiding all subsequent deeds per the Supreme Court's well-reasoned decisions?" Plaintiff's brief at 9.

We begin with our standard of review:

In ruling on preliminary objections in the nature of a demurrer, the trial court was required to accept as true all well-

pleaded allegations of material fact and all reasonable inferences deducible from those facts and resolve all doubt in favor of the non-moving party. The question presented was whether, on the facts averred, the law says with certainty that no recovery is possible. When any doubt exists as to whether the demurrer should be sustained, this doubt should be resolved in favor of overruling it.

On appeal from the trial court's order overruling preliminary objections in the nature of demurrer, our standard of review is de novo and our scope of review is plenary. Hence, we apply the same standard as the trial court in evaluating the legal sufficiency of the complaint, and examine whether, on the facts averred, the law says with certainty that no recovery is possible.

*Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967, 970–71 (Pa.Super. 2021) (cleaned up).

Plaintiff's claims of error surround the trial court's determination that Deed 5 in the chain of title, which indicates that the City of Philadelphia transferred title to Haviv David in 2012, effectively conveyed title to the Property absolutely pursuant to 53 P.S. § 7283. That statute provides, in pertinent part, as follows:

(a) In . . . cities of the first class, whenever a claimant has filed its tax or municipal claim in accordance with the requirements of this act, it may file its petition in the court in which the proceeding is pending, setting forth the facts necessary to show the right to sell, together with searches or a title insurance policy, showing the state of record and the ownership of the property, and of all tax and municipal claims, mortgages, ground rents or other charges on, or estates in, the land, as shown by the official records of the city or county, or the political subdivision in which the real estate is situate, and thereupon the court shall grant a rule upon all parties thus shown to be interested, to appear and show cause why a decree should not be made that the property be sold, freed and cleared of their respective claims, mortgages, ground rents, charges and estates. If upon a hearing, the court is satisfied that service had been made of the rule upon the parties respondent in

- 4 -

the manner provided in this act for the service of writs of *scire facias* to obtain judgments upon tax and municipal claims, and that contemporaneously with the service of the rule on the parties respondent notice of the rule has been published by the claimant in at least one newspaper of general circulation in the county, and in a legal periodical published therein, if any, and that the facts stated in the petition be true, it shall order and decree that the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter by the claimant, clear of all claims, liens, mortgages, ground rents, charges and estates, to the highest bidder at such sale and after payment of the tax or municipal lien the balance of the proceeds realized therefrom, shall be distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates, and **the purchaser at such sale shall take and forever thereafter have, an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, ground rents, charges and estates of whatsoever kind, subject only to the right of redemption as provided by law**. The date of the sale shall be advertised in at least one newspaper of general circulation in the county and in the legal periodical published therein.

(b) The deed to the purchaser shall be executed, acknowledged and delivered as in other real estate sales by the sheriff. Deeds for property exposed for any sale under this section shall not be executed, acknowledged and delivered any sooner than thirty days nor later than one hundred and twenty days after the purchaser pays the balance due to the sheriff for any sale held under this section. Any person interested may at any time prior to the proposed sale pay all the costs of the proceedings, including the cost for the title search or title insurance policy, and all tax and municipal claims, penalties and interest thereon, charged against the property whereupon the proceedings on petition shall at once determine.

. . . .

(d) Any claimant may bid and become the purchaser of the property at such sale, and if such purchaser shall be a taxing authority within the city or county, such property while held and owned by such taxing authority, shall not be subject to tax claims, unless it be redeemed by the former owner or other person having the right to redeem, as provided by law. If, however, a city or county, or a taxing authority within the city or county, shall

- 5 -

become the purchaser at said sale, the former owner or other persons, desiring to redeem, shall pay all taxes and municipal claims accrued and chargeable against the property prior to the sale thereof, together with the costs and interest thereon, and also all taxes and claims, whether filed or not, which would have accrued and become chargeable against the property had the same been purchased at the sale by some party other than the city or county, or a taxing authority within the city or county.

(e) Upon the delivery by the sheriff of a deed for any property sold under the provisions of this section, the judgment upon which such sale was had shall thereupon and forever thereafter be final and conclusive, and the validity thereof shall not be questioned for any cause whatsoever.

53 P.S. § 7283 (emphasis added).

The trial court explained its ruling as follows:

In this case, Plaintiff is correct in their assertion that a fraudulently recorded deed, and all subsequently recorded deeds that flow from the fraudulent deed, are void as a matter of law. However, the key fact which this Court's decision turns upon is the occurrence of the 2012 sheriff's sale. [Pursuant to 53 P.S. § 7283], a sheriff's sale which occurs in Philadelphia shall take an absolute title to the property sold, and the statute of limitations to challenge said sale commences on the date of the sheriff's sale and lasts for six years. [**See Pfeifer v. Westmoreland Cnty. Tax Claim Bureau**, 127 A.3d 848, 851 (Pa.Cmwlth. 2015) ("[A] cause of action to set aside a tax sale on the basis of deficient notice accrued and the statute of limitations began to run on the date of the tax sale.").]

The purchaser at the 2012 tax sale, Defendant [Haviv] David, recorded the deed on October 12, 2012, which put the public and Plaintiff on notice. As such, Plaintiff had until October 12, 2018, to commence an action against this 2012 sheriff's sale. The reasonable inference from this event is that the sheriff's sale occurred due to the non-payment of real estate taxes towards the Property. Most importantly, Plaintiff does not contend that either he or his decedent continuously and consistently paid real estate taxes on the Property, on or prior to, 2012. This omission is key since it has long been held that a tax sale cannot divest a property owner who can establish a valid chain of title through recorded

deed and has paid all assessed taxes on the property. However, a tax sale does have the ability to divest a property owner if delinquent taxes can be shown.

Finally, Plaintiff's claim is further precluded due to the doctrine of laches since Plaintiff had constructive notice of the sheriffs sale as far back as the recorded deed in 2012. As the result of Plaintiffs delay in instituting the instant action, Defendant Hyperion was granted a mortgage and related documents, with the intent to use the Property as a security interest. If Plaintiff had performed their due diligence within the six-year statute of limitations time period, Defendant Hyperion would not be prejudiced by having its security interest in the Property nullified, as requested by Plaintiff in the Complaint. . . . Plaintiff had sufficient and appropriate notice of the sheriffs sale and the failure to bring action within the six year period as specified by 42 Pa.C.S. § 5527(b) is now barred by the statute of limitations and the doctrine of laches.

Trial Court Opinion, 12/13/21, at 6.

Plaintiff does not dispute that the trial court properly accepted as true the facts alleged in his amended complaint. Indeed, our review of the certified record reveals that the summary of the purported transfers of the Property proffered by the trial court was taken nearly verbatim from Plaintiff's pleading. *See* Amended Complaint, 6/16/21, at ¶¶ 11-24. Nor does Plaintiff dispute that the 2012 deed resulted from a sheriff's sale conducted pursuant to 53 P.S. § 7283.

Rather, Plaintiff argues that "[t]he tax sale here violated the Estate's right to due process as no notice was provided to the Estate to which Plaintiff is the administrator." Plaintiff's brief at 18. Plaintiff further maintains that the provisions of § 7283 regarding the inviolability of a tax sale deed do not trump the pronouncements of our Supreme Court that a forged deed cannot

- 7 -

"ever affect the owner of the property" purportedly conveyed thereby, and that "no man can be deprived of his property by a forged deed or mortgage, no matter what may be the bona fides of the party who claims under it." *Id*. at 16-17 (cleaned up) (quoting *Smith v. Markland*, 72 A. 1047 (Pa. 1909)). Finally, Plaintiff asserts that application of laches is inappropriate under these circumstances because "the fraudulent conveyance at issue was discovered in 2019," and he promptly became appointed administrator of the Estate and initiated proceedings. *Id*. at 26. Moreover, Plaintiff contends that defendant Hyperion was not prejudiced because it had the constructive notice and knowledge that there was a fraudulent deed in the chain of title, but proceeded with the mortgage anyway. *Id*. at 27.

We are unpersuaded by Plaintiff's arguments. Pursuant to the plain language of § 7283, the transfer of the property for failure to pay taxes thereupon became "forever thereafter . . . final and conclusive," such that its validity thereafter could "not be questioned for any cause whatsoever." 53 P.S. § 7283(e). The publication of notice of the tax sale and recording of the 2012 deed provided constructive notice to Plaintiff's Estate that someone other than the Estate purported to hold title to the Property, and resulted in conveyance of title to defendant Haviv David wholly divorced from the prior fraud. The Estate did nothing to assert its ownership rights over the Property until 2019, and, significantly, obviously failed to pay taxes on the property during the twenty years between the time Plaintiff's decedent died in 1999

and it discovered in 2019 that the Property was the subject of a string of recorded deeds beginning in 2007.

Instead, the Estate sat on its rights while its claims became stale. As we have explained:

> The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared. The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual, and is determined by examining the circumstances of each case.

***Fulton v. Fulton***, 106 A.3d 127, 131 (Pa.Super. 2014) (cleaned up). ***See also Holiday Lounge, Inc. v. Shaler Enterprises Corp.***, 272 A.2d 175, 177 (Pa. 1971) ("It is settled that laches may be raised and determined by preliminary objection if laches clearly appears in the complaint."). Our sister Court has observed that delay in challenges to tax sales present logistical difficulties, and that allowing such delayed challenges "to old tax sales" to proceed "would wreak havoc on Pennsylvania's property system." ***Pfeifer***, ***supra*** at 855.[1]

Plaintiff does not dispute that the sale of the Property was conducted in accordance with § 7283 based upon the owner's failure to pay taxes following the giving of proper notice to the public. Had the Estate paid taxes on the

---

[1] "Although the decisions of the Commonwealth Court are not binding upon this Court, they may serve as persuasive authority." ***Commonwealth v. Rodriguez***, 81 A.3d 103, 107 n.7 (Pa.Super. 2013).

property it believed that it still owned, the sale would not have occurred and it would still have the right to invalidate the fraudulent deeds recorded in 2007. Instead, the Philadelphia sheriff conveyed by the 2012 deed "an absolute title to the property sold, free and discharged of all . . . estates of whatsoever kind, subject only to the right of redemption as provided by law." 53 P.S. § 7283(a). Assuming *arguendo* that Plaintiff's claim survived that sale, the Estate sat on its rights for the intervening seven years. Asserting claims now would prejudice defendant Hyperion, which was entitled to rely upon the lack of a challenge to the 2012 sale within the six-year statute of limitations.

Accordingly, we conclude that Plaintiff's amended complaint was properly dismissed based upon the doctrine of laches.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022

- 10 -