J-A20005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VAMSIDHAR R. VURIMINDI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARY SCHAHEEN, PATRICK KEENAN, | : | No. 1473 EDA 2024 |
| JACK HOURIET, ANN S. SHAINLINE, | : | |
| NUMODA CORPORATION, NUMODA | : | |
| TECHNOLOGIES, INC. | : | |

Appeal from the Order Entered May 28, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220602175

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:          **FILED SEPTEMBER 11, 2025**

Vamsidhar R. Vurimindi (Appellant), *pro se*, appeals from the order denying his motion for summary judgment, and granting the motion for summary judgment filed by Mary Schaheen (Schaheen), Patrick Keenan (Keenan), Jack Houriet (Houriet), Numoda Corporation (Numoda), Numoda Technologies, Inc. (Numoda Tech) (collectively, Numoda Defendants), and Ann S. Shainline (Ms. Shainline) (Ms. Shainline and Numoda Defendants collectively referred to as Defendants). After careful review, we affirm.

The trial court summarized the factual and procedural background underlying this appeal:

_____

[*] Retired Senior Judge assigned to the Superior Court.

In August 2010, [Appellant's then-wife, Ms. Shainline,] filed a complaint for divorce against [Appellant] in the Family Division of the Philadelphia Court of Common Pleas [(the family court)]. In December 2016, the family court entered a divorce decree … dissolving the marriage. On February 26, 2019, the family court entered an amended order for equitable distribution [of marital property] …, ordering Ms. Shainline to transfer to [Appellant] her "remaining interest and shares in the Delaware corporations known as Numoda [] and Numoda Tech[.]"[1] [Family Court Order, 2/26/19.] On June 3, 2022, Ms. Shainline purported to transfer her shares in Numoda [] and Numoda Tech[] to [Appellant] via a transfer agreement.

However, Ms. Shainline had previously executed a stock transfer agreement (STA) while [she was] a shareholder in MCR Systems, Inc. [(MCR)], the company to which Numoda [] is successor[. The STA] survived the merger of MCR [with Numoda]…. Under Section VI of the STA, "[a]ll decisions to transfer, give, sell, alienate, create, or bequeath any issued common or other stock to/for others who are not the shareholders in this agreement will be made by majority vote of the issued shares of stock of the company." [STA § VI].

Additionally, Section VIII of the STA broadly defines "transfer" to include "the sale, assignment, transfer, creation, conveyance, gift, encumbrance, pledge, bequest, devise, hypothecation, or other disposition of Shares, including permitting a levy or attachment of Shares." [*Id.* § VIII.]

**It is undisputed that Ms. Shainline never informed the [family] court in the divorce action of the STA before entry of the equitable distribution order[,] and never sought approval from Numoda's shareholders for the transfer of her shares to [Appellant].**

---

[1] Numoda and Numoda Tech are closely-held entities. The record reflects that Ms. Shainline holds 7,745,000 shares in Numoda, representing 27.5% of the company; Schaheen, Keenan, and Houriet together control a majority of Numoda shares. The record is less than clear whether the same individuals also hold shares in Numoda Tech (as Appellant argues), or whether that entity is directly owned by Numoda.

On June 23, 2022, [Appellant] initiated this action by filing a complaint against [Defendants]. [Appellant sought] declarations that [Defendants] breached their duties in failing to take necessary steps to effectuate the transfer of Ms. Shainline's shares and failing to formally transfer the shares [to Appellant]. [Appellant] also seeks a permanent injunction enjoining [Defendants] to make formal transfer of Ms. Shainline's shares to [Appellant].

In responding to [Appellant's] complaint, [Defendants] asserted counterclaims seeking declarations that Ms. Shainline's purported transfer of her shares is null and void under the STA[,] and that any attempted transfer of Ms. Shainline's shares requires approval … of the holders of a majority of Numoda's shares.

Trial Court Opinion, 7/16/24, at 1-3 (emphasis and footnote in original omitted; footnote and emphasis added; some capitalization modified).

On February 21, 2024, Appellant filed a motion for summary judgment. On March 12, 2024, Defendants, too, filed a motion for summary judgment. On May 28, 2024, the trial court entered an order denying Appellant's motion for summary judgment, granting Defendants' motion for summary judgment, and dismissing Appellant's complaint with prejudice. The trial court granted injunctive and declaratory relief to Defendants on the grounds that "Ms. Shainline's purported transfer [of stock] to [Appellant] was null and void because it was not approved by the majority vote required by the STA." Order, 5/28/24, at 2 n.1.

Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant identifies four questions for our review:

1. Whether the Appellant is a stockholder of Numoda [] and Numoda Tech[,] and [the Numoda Defendants] owe duties of care, loyalty, good faith, and fairness to the Appellant?

- 3 -

2. Whether the trial court usurped [a] jury function and wrongfully determined [that the] doctrines of acquiescence and laches do[ not] preclude [the Numoda Defendants] from asserting undisclosed [STA] restrictions?

3. Whether [Ms. Shainline] had 7,745,000 shares in Numoda Tech[]?

4. Whether the Appellant established his right to declaratory and injunctive relief against [the Numoda Defendants,] and conversely[, whether the Numoda Defendants] failed to prove their right to relief against the Appellant?

Appellant's Brief at 4.

Appellant appeals from the trial court's order granting Defendants' motion for summary judgment:

> [I]n reviewing the grant … of a motion for summary judgment, this Court's standard of review is *de novo*, and our scope of review is plenary. … [A] trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. It is the moving party's burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. The trial court must also resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

*Khalil v. Williams*, 278 A.3d 859, 871 (Pa. 2022) (internal quotation marks and citations omitted). Thus, it is this Court's responsibility

> to determine whether the record either established that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that

- 4 -

would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Gerber v. Piergrossi***, 142 A.3d 854, 858 (Pa. Super. 2016) (citation omitted).

Regarding the trial court's grant of declaratory relief,[2]

[o]ur standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence. However, the application of the law is always subject to our review. Where, as here, the interpretation of a contract is a matter of law, we need not defer to the trial court's reading of the Agreement.…

***McLafferty v. Council for the Ass'n of Owners of Condo. No. One, Inc.***, 148 A.3d 802, 807 (Pa. Super. 2016).

In reviewing a grant of injunctive relief, "our standard of review is *de novo*, and our scope of review is plenary." ***Kuznik v. Westmoreland Cty. Bd. of Comm'rs***, 902 A.2d 476, 489 (Pa. 2006).

[T]he party seeking relief must establish that his [or her] right to relief is clear, that an injunction is necessary to avoid an injury

_____

[2] Section 7532 of the Declaratory Judgment Act states,

[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532.

that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested.

*Id.* (citations and internal quotation marks omitted).

In his first issue, Appellant argues that the trial court improperly granted summary judgment in Defendants' favor, because he is the equitable and beneficial owner of Ms. Shainline's 7,745,000 shares in Numoda. Appellant's Brief at 22. Appellant claims that upon the family court filing its equitable distribution order, he became the beneficial and equitable owner of Ms. Shainline's Numoda shares. *Id.* at 29-30. Appellant argues that this Court must therefore treat Appellant as the "stockholder" of the 7,745,000 shares. *Id.* at 25.

Appellant also contends that the Numoda Defendants improperly failed to disclose the existence of the STA during prior proceedings. *Id.* at 31. Because the Numoda Defendants "participated as non-parties" in the divorce action, and as parties in a declaratory judgment action, Appellant contends that this Court

> must overrule the trial court's erroneous holding and treat Numoda [Defendants] [*sic*] deliberately suppressed the disclosure of the STA to delay and deny economic justice for the Appellant under the Pennsylvania Divorce Code.

*Id.* at 32.

Appellant further argues that Defendants breached their "implied[-]in[-]fact contractual duty" to transfer the stock certificates to him. *Id.* Appellant argues that the Numoda Defendants,

involving a chain of intermediaries – [including Ms.] Shainline, … [the family court], Superior Court, and Common Pleas Court in Declaratory Judgment Action I, entered into an indirect, implied-in-fact, and implied-in-law contractual relationship with Appellant, by way of [the] Numoda [Defendants'] actions, behavior and circumstances of the people involved by consenting for awarding [*sic*] 100% of [Ms. Shainline's] 7,745,000 shares and thereby consenting to register Appellant as record owner of [the shares]….

***Id.*** at 33.

Appellant claims the trial court erred in concluding that the Numoda Defendants had no duty to disclose the STA in the family court proceedings. ***Id.*** at 35. Appellant contends that if the Numoda Defendants had disclosed the STA in that action, the family court would not have awarded the shares to him. ***Id.*** at 33. Appellant further challenges the trial court's failure to find that the Numoda Defendants were deceptive and misled the courts and Appellant regarding the STA's existence. ***Id.*** at 35-36.

Defendants counter that Appellant is not entitled to injunctive relief, *i.e.*, an order requiring transfer of Ms. Shainline's shares, because Appellant's right to relief is not clear. Appellees' Brief at 15. Specifically, Defendants claim Appellant failed to establish that a majority of Numoda's shareholders have (or would have) approved the transfer of Ms. Shainline's shares to Appellant, an approval required by the STA. ***Id.*** Defendants point out Appellant's acknowledgement that the STA governs the transfer of Numoda shares. ***Id.*** at 16. Because Ms. Shainline failed to obtain the approval of a majority of Numoda shareholders, Defendants agree with the trial court that Appellant

"cannot satisfy the requisite elements of injunctive relief as a matter of law." **Id.** at 17.

Our review discloses that Appellant filed the instant action to "enforce" the family court's award of the shares to him against Ms. Shainline and the Numoda Defendants. Complaint, 6/23/22, introduction. Appellant, acting *pro se*, (1) demanded a declaration that the Numoda Defendants breached their duty to transfer Ms. Shainline's shares to him; and (2) demanded injunctive relief, *i.e.*, a directive that the Numoda Defendants "shall make a formal transfer" of the shares to Appellant in accordance with the family court's order. **Id.**, prayer for relief, ¶¶ (a)-(c).

The issue presented by this case implicates the interpretation of the STA, a contract. "[T]he interpretation of a contract is a question of law" subject to a *de novo* standard of review and plenary scope of review. **Vinculum, Inc. v. Goli Techs., LLC**, 310 A.3d 231, 242 (Pa. 2024).

"The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." **Sensenig v. Greenleaf**, 325 A.3d 654, 659 (Pa. Super. 2024) (citation omitted).

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. Courts are not to assume that a contract's language was chosen carelessly or that the parties were ignorant of the meaning of the language they utilized.

**Seven Springs Farm v. Croker**, 801 A.2d 1212, 1215 (Pa. 2002) (internal citations and quotation marks omitted).

Significantly,

[i]n Pennsylvania, restrictive [stock] transfer provisions are strictly construed. Because alienation is an inherent attribute of corporate stock[,] … restrictive agreements are not favorites of the law and are strictly construed….

*Id.* at 1217 (internal citations and quotation marks omitted).

Instantly, the STA governs the transfer of shares of Numoda. STA Section VI provides, in relevant part, that

[a]ll decisions to transfer, give, sell, alienate, create or bequeath any issued common or other stock to/for others who are not the shareholders in this Agreement **will be made by majority vote of the issued shares of stock of the company**….

STA, § VI (emphasis added). The STA further provides, in pertinent part, as follows:

VII. Shares Subject to this Agreement

All shares not owned or hereafter transferred to or from a party, including any shares which may hereafter be issued by [Numoda,] shall be created, held, given, sold, bequeathed and transferred subject to the terms of [the STA].

VIII. Transfer or Dispose

"Transfer" or "dispose" shall mean the sale, assignment, transfer, creation, conveyance, gift, encumbrance, pledge, … or other disposition of Shares, including permitting a levy or attachment of the Shares.

\*       \*       \*

XV. Offers to Sell

**Each Shareholder agrees that she will not sell any or all of the Shares which she now owns or hereafter may acquire unless and until she shall have offered to sell such Shares first, to the Other Shareholders and then to the company** ….

Any Shareholder(s) desiring to sell any of her (their) Shares (the "Selling Shareholders") shall give Notice ("Sale Notice") to the other Shareholders and to the company, specifying [her] intent to sell and the number of shares which the Selling Shareholder(s) desire(s) to sell….

\*     \*     \*

XXIV. <u>Purported Transfer in Violation of Agreement</u>

**If any Shareholder attempts or purports to Transfer any or all of his Shares in violation of** [**the**] **Agreement, any such attempted or purported transfer shall be null and void**, of no legal effect and deemed to be a default hereunder. The Shareholders agree that **if a shareholder attempts to effect or suffers to occur a purported Transfer in violation of** [**the STA**]**, the non**[**-**]**transferring Shareholders**, or any of them, in addition to any other remedies available under [the] Agreement, **may seek to enjoin such a purported Transfer**, and the transferring Shareholder, for [her]self and [her] personal representatives, agrees to submit to the jurisdiction of any court of equity in the Commonwealth of Pennsylvania or elsewhere and to be bound by any order of such a court enjoying such an attempted or purported Transfer.

\*     \*     \*

XXVIII. <u>Effect of Lawsuits</u>

**In the event of the divorce … against any party to** [**the**] **Agreement, that party's shares of the company will revert to the company, immediately.** The determination of whether the transfer, gift, sale, alienation, creation or bequest of any shares of stock by any party will be allowed, must occur no later than 120 days from notification to all parties by the party wishing to transfer, give, sell, alienate, create or bequeath stock of the company.

*Id.* §§ VII-VIII, XV, XXIV, XXVIII (emphasis added). Finally, the STA states

that it survives "the bankruptcy, dissolution, sale *or merger* of the company."

STA, § XXXII (emphasis added).

- 10 -

The trial court concluded that Defendants were entitled to judgment as a matter of law, because

> [i]t is undisputed that Ms. Shainline never informed the [family] court in the divorce action of the STA before entry of the equitable distribution order **and never sought approval from Numoda's shareholders for the transfer of her shares to** [**Appellant**].

Trial Court Opinion, 7/16/24, at 2 (footnote omitted; emphasis added).[3]  The trial court concluded,

> [Defendants are] entitled to summary judgment on [Appellant's] claims because … [Appellant] has presented no evidence that the transfer of Ms. Shainline's shares received majority shareholder approval pursuant to the STA.  Numoda is also entitled to summary judgment on its counterclaims because Ms. Shainline's purported transfer of her shares did not have majority shareholder approval and any such transfer requires that approval – again pursuant to the STA.
>
> ….
>
> [Appellant's] complaint also seeks a permanent injunction enjoining [the Numoda Defendants] to transfer Ms. Shainline's shares to him.  … Under the STA that Ms. Shainline signed, any transfer of shares must be approved by a majority vote of the issued shares of stock of the company.  Such restrictions are permitted under both Delaware and  Pennsylvania law.[FN]  Given that [Appellant] has presented no evidence that Ms. Shainline's purported transfer was ever approved, [Appellant] has failed to establish his clear right to relief.
>
> _____
>
> [FN] 8 Del. C. § 202(b) & (c); 15 Pa.C.S.[A.] § 1529(c)(3).

_____

[3] The trial court further stated that, although the equitable distribution order recognized Ms. Shainline's ownership of 27.5% of Numoda, the order "does not identify any Numoda Tech shares owned by Ms. Shainline.  Ms. Shainline has admitted she owns no shares of Numoda Tech."  Trial Court Opinion, 7/16/24, at 2-3 n.8.  Our review confirms there is no record evidence that Ms. Shainline owns shares of Numoda Tech.

> Conversely, based on this same reasoning, [Defendants are] entitled to summary judgment on their counterclaims …. As Ms. Shainline's purported transfer did not get shareholder approval as required by the STA, it is null and void and without legal effect. And given the STA's explicit requirement of shareholder approval of any transfer, the necessity of avoiding the unauthorized transfer of shares, and the greater injury resulting from refusing [Defendants'] requested relief, [Defendants are] entitled to a permanent injunction enjoining any transfer of Ms. Shainline's shares without the required shareholder approval.

*Id.* at 4-5 (footnote in original).[4]

Based upon our review of the language of the STA, we agree with the trial court that summary judgment in favor of Defendants is warranted. The STA's language clearly restricts the transfer of shares without majority shareholder approval. As the parties do not dispute that Ms. Shainline failed to seek majority shareholder approval prior to transferring her shares to Appellant, the transfer is null and void under the STA. STA, § XXIV. Appellant's first issue merits no relief.

In his second issue, Appellant argues that the trial court erred in not concluding that the laches doctrine barred the Numoda Defendants from asserting the binding effects of the STA and its restrictions. Appellant's Brief at 36. Appellant argues that "the trial court has evidence that [the] Numoda [Defendants] ha[d] constructive notice about the possible distribution of [Ms.

_____

[4] The trial court did not discuss the applicability of STA Section XXVIII, which would apply in the event of divorce. Under Section XXVIII, Ms. Shainline's shares automatically reverted to Numoda at the time of the divorce action.

- 12 -

Shainline's] shares" in Numoda. *Id.* at 36-37. According to Appellant, the Numoda Defendants offered no objection to the award of Ms. Shainline's Numoda shares to Appellant during the equitable distribution proceedings. *Id.* at 37. Appellant claims the Numoda Defendants failed to present evidence countering his assertion that they intentionally suppressed the STA's existence. *Id.* at 39. Appellant asserts he suffered prejudice because there are no longer any means by which Appellant could receive his equitable share of the marital estate. *Id.*

Appellant asserts that "under the doctrine of acquiescence, the Numoda Defendants are not permitted to assert non-disclosed STA restrictions" as grounds for precluding this action. *Id.* at 38. According to Appellant, the Numoda Defendants waived all objections through their silence and/or inaction. *Id.*

"The equitable defense of laches applies to claims for injunctive relief and may be grounds for the denial of an injunction…." *Morgan v. Millstone Res. Ltd.*, 267 A.3d 1235, 1244 (Pa. Super. 2021).

> The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual, and is determined by examining the circumstances of each case.

*Lomax v. Sullivan*, 282 A.3d 790, 795 (Pa. Super. 2022) (citation omitted).

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from

petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay....

***Morgan***, 267 A.3d at 1245 (citation omitted).

Our Supreme Court described the doctrine of estoppel by acquiescence as follows:

> An estoppel may be raised by acquiescence, where **a party aware of his own rights sees the other party acting upon a mistaken notion of his rights.** The rule is well recognized that when a party with full knowledge or with sufficient notice or means of knowledge of his rights and of all the material facts, remains inactive for a considerable time or abstains from impeaching the transaction, so that the other party is induced to suppose that it is recognized, this is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable....

***In re Kennedy's Estate***, 183 A. 798, 801 (Pa. 1936) (citations and quotation marks omitted; emphasis added).

Upon careful review, we conclude Appellant's claims of laches and estoppel by acquiescence lack merit. Appellant's equitable defenses are based upon the inaction of the Numoda Defendants in the family court proceedings. However, the Numoda Defendants were not parties in the family court proceedings. We cannot invoke the equitable doctrines of laches and acquiescence based upon the inaction of nonparties to the family court proceedings.

Regarding Appellant's claim the Numoda Defendants breached their fiduciary duties to Appellant, we observe the following. As set forth above, the STA precluded the transfer of shares of Numoda without prior majority shareholder approval. STA, § VII. The STA further provided that any

- 14 -

purported transfer of shares, in violation of the STA, is null and void. *Id.* § XXIV. As the trial court correctly observed in its opinion, "Numoda owes [Appellant] no fiduciary duties because he has presented no evidence that the transfer of Ms. Shainline's shares received majority shareholder approval pursuant to the STA." Trial Court Opinion, 7/16/24, at 4. The Numoda Defendants owed no fiduciary duty to Appellant, a non-shareholder. Accordingly, Appellant's second issue merits no relief.

In his third issue, Appellant argues that Ms. Shainline owns 7,745,500 shares, or 27.5% of Numoda Tech. Appellant's Brief at 41. Citing a Delaware chancellery court action, Appellant claims

> [t]here was an understanding among Numoda [Defendants] that Numoda Tech[] spin-off [*sic*] from parent Numoda [] with mirrored shareholding structures, and Numoda Tech[] shares are under the control of Numoda []. Therefore, … [Ms.] Shainline had retained 7,745,500 shares, or 27.5% ownership in Numoda Tech[]. [The] Philadelphia [f]amily [c]ourt awarded 7,745,400 shares, or 27.5% **each** in Numoda [] and Numoda Tech[] to [] Appellant. Therefore, [Ms.] Shainline's admission that she does not own any share in Numoda Tech[] does not undo [the chancellery court's and family court's holdings that] awarded 7,745,000 Numoda Tech[] shares to Appellant….

*Id.* at 42 (emphasis added). Based on this reasoning, Appellant argues, the trial court erred in concluding that Ms. Shainline owns no shares in Numoda Tech. *Id.*

Our review discloses Appellant's claim lacks any record support. As the trial court stated in its opinion, "Ms. Shainline has admitted that she owns no shares of Numoda Tech." Trial Court Opinion, 7/16/24, 2-3 n.8. The trial

court further recognized that in the equitable distribution proceedings, the family court did not identify any Numoda Tech shares owned by Ms. Shainline. *Id.* Finally, our review discloses no Delaware chancellery court decision awarding any shares of Numoda Tech to Appellant. Because the record is clear and free from doubt on this issue, Appellant's claim regarding Ms. Shainline's purported shares of Numoda Tech merits no relief.

Appellant also claims that the Delaware chancellery court declared him to be the beneficial owner of Ms. Shainline's Numoda shares. However, our review of the Delaware chancellery court's decision, attached to Appellant's motion for summary judgment, discloses only one mention of the issue of "beneficial ownership":

> Given Numoda's opposition to [Appellant's] stock ownership, one potential resolution would involve compelling [Ms.] Shainline to cause Numoda to repurchase [Ms.] Shainline's shares, pursuant to the process provided in the STA. STA § XXI-XXIII. In that scenario, while [Ms.] Shainline would remain the legal owner of the shares, [Appellant] would be the beneficial owner and the sale proceeds would flow to him.

*Numoda Corp. v. Vurimindi*, C.A. No. 2022-0555-SG, 1/23/23, at 5 n.22. The Delaware chancellery court did not address the substantive merits of any of Appellant's claims. Rather, the court *dismissed* claims involving Numoda's internal corporate affairs as "not ripe," and stayed any action related to the STA. *Id.* at 3-4. Thus, the Delaware chancellery court did not recognize Appellant's beneficial ownership of Ms. Shainline's shares. *See id.* at 4. Appellant's third issue merits no relief.

In his fourth and final issue, Appellant argues that he established his right to declaratory and injunctive relief against Defendants. Appellant's Brief at 43. Appellant's argument is premised on his claim that he is a "stockholder" of 100% of 7,745,000 Numoda and Numoda Tech shares. *Id.* Appellant repeats his argument that the doctrines of acquiescence and laches preclude the Numoda Defendants from asserting the previously undisclosed STA restrictions as prohibiting transfer of the shares. *Id.* at 42-43.

Appellant additionally argues that the application of the STA's restrictions is unreasonable. *Id.* at 46. Appellant directs our attention to Delaware law requiring stock restrictions to be reasonable. *Id.* Appellant argues that the STA's restriction on the transfer of shares, without a majority shareholder vote, acts to prohibit the voluntary transfer or sale of stock. *Id.* at 47-48. Appellant asserts that the STA's restriction is analogous to a restriction that would perpetuate a company to consist of shareholders who were "agreeable" to the board, a restriction invalidated by the Delaware court in *Greene v. E.H. Rollins Sons*, 2 A.2d 249 (Del. Ch. 1938). Appellant's Brief at 45-46.

Appellant fails to address the controlling, uncontradicted facts that he is not presently a Numoda shareholder; Ms. Shainline never requested that the Numoda Defendants approve transfer her shares to Appellant; and Numoda had no opportunity to approve or reject the transfer. Under these circumstances, we conclude that Appellant's challenges to Numoda's share

transfer restrictions are premature and speculative. Appellant's fourth issue warrants no relief.

For the foregoing reasons, we discern no trial court error in granting summary judgment in favor of Defendants, and against Appellant. We therefore affirm the trial court's order.

Order affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/11/2025